**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| PHILIPS NORTH AMERICA LLC<br><br>Plaintiff,<br><br>v.<br><br>ATLAS COMPREHENSIVE TECHNICAL<br>SERVICES INC. and SIMON MARTINEZ,<br><br>Defendants. | Case No.: 3:23-cv-40<br><br>JURY TRIAL DEMAND |

**COMPLAINT**

Plaintiff Philips North America LLC ("Philips" or "Plaintiff"), by and through its undersigned counsel, hereby brings the following Amended Complaint against Atlas Comprehensive Technical Services Inc. ("Atlas") and Simon Martinez ("Martinez") (collectively referred to herein as "Defendants"), and pleads as follows:

**NATURE OF THE ACTION**

1.      Philips develops, sells, supports, maintains, and services medical imaging systems, such as computed tomography (CT) systems, x-ray systems, nuclear medicine systems, PET scanners, magnetic resonance (MR) scanners, and ultrasound machines used at hospitals and medical centers, including the proprietary hardware, software, and documentation for such systems.

2.      Philips' proprietary software enables certain functions on Philips' medical imaging systems and enables Philips to control, update, and track the use of its ultrasound system software in the marketplace. Philips' customers pay for enabled features and additional options. These features and options enable software functionality and selectively enable interoperability with a

variety of related Philips' hardware devices. Philips also has generated extensive proprietary information, documentation, and software for servicing the Philips' systems.

3.    Philips' access controls protect Philips' copyright-protected software and documentation as part of Philips' system of managing the terms and conditions upon which Philips' software may be accessed.

4.    Atlas is a medical device equipment sale and servicing company that services and, on information and belief, sells Philips' medical imaging devices, and Simon Martinez is the owner of Atlas.

5.    Defendants have fraudulently created, obtained, used, or sold counterfeit, intentionally modified or otherwise unauthorized Philips' software and access tools that circumvent Philips' access control measures (the "unauthorized access methods"). These fraudulent, modified, or otherwise unauthorized access methods are sold to third parties or used by Defendants, on information and belief, to enable software options and add-on features on Philips' ultrasound devices that neither Defendants nor the third-parties have a license to use and have not paid for. Defendants, on information and belief, engage in such conduct to further their repair, sale, or service contract business.

6.    On information and belief, Defendants have used, provided, or sold additional unauthorized access methods to hack Philips' ultrasound machines to enable unlicensed features or options on Philips' ultrasound systems.

7.    Based on Defendants' conduct and the resulting damages suffered by Philips, Philips asserts claims in this Complaint for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; Harmful Access By Computer in Violation of Texas Penal Code § 33.02, Tex. Civ. Prac. & Rem. Code § 143.001 *et seq.*; the Digital Millennium Copyright Act

("DMCA"), 17 U.S.C. §§ 1201 and 1202; the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; the Texas Uniform Trade Secrets Act ("UTSA"), Tex. Civ. Prac. & Rem. Code § 134A.001, *et seq.*; and unfair competition.

8.      Philips brings this action against Defendants to recover damages or other monetary relief caused by these activities.

9.      Philips additionally seeks a permanent injunction, among other things, preventing Defendants, their employees and affiliates from creating, obtaining, using, or selling counterfeit, modified, or otherwise unauthorized Philips' software and unauthorized access methods that allow Defendants or third parties to circumvent Philips' access controls to enable unlicensed features or options on Philips' ultrasound machines.

## PARTIES

10.     Plaintiff Philips North America LLC is a Delaware LLC, formerly known and doing business as Philips North America Corporation (a Delaware Corporation), with a principal place of business in Andover, Massachusetts.

11.     Plaintiff is in the business, *inter alia*, of developing, manufacturing, selling, supporting, maintaining, and servicing Philips medical imaging systems, including the proprietary hardware and software and related trade secrets used to operate, service, and repair such systems.

12.     Atlas is a corporation that provides sales, repair, and consulting services for diagnostic medical ultrasound machines and is organized and existing under the laws of the State of Texas with a principal place of business in Santa Fe, Texas.

13.     On information and belief, Defendant Simon Martinez resides in Santa Fe, Texas.

## JURISDICTION AND VENUE

14.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 (federal question), because asserted claims arise under 18 U.S.C. § 1030(a), 17 U.S.C. §§

1201 and 1202, and 18 U.S.C. § 1836, and 28 U.S.C. §1369 (supplemental jurisdiction) and the

doctrines of ancillary and pendent jurisdiction.

15.     This Court has personal jurisdiction over Atlas, because it is registered in Texas

and has a principal place of business in Texas.

16.     This Court has jurisdiction over Martinez because he resides in Texas.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because

Defendants reside in this judicial district or a substantial part of the conduct, events, or omissions

giving rise to Philips' claims occurred in this judicial district or had or have connections to this

judicial district.

## PHILIPS' MEDICAL IMAGING SYSTEMS AND PROPRIETARY INFORMATION

18.     Philips develops, manufactures, sells, and subsequently supports, maintains, and

services medical imaging systems, including developing, manufacturing, selling, supporting,

maintaining, and servicing the proprietary hardware and software used to operate, service, and

repair such systems.  The systems include, but are not limited to, imaging devices such as CT and

PET scanners, x-ray machines, ultrasound machines, MR scanners, and nuclear medicine scanners.

19.     Philips ultrasound systems are complex pieces of medical equipment that include

accompanying proprietary software developed and owned by Philips.  Because the proprietary

software enabled on Philips ultrasound systems allows them to function, the proprietary software

includes strict access controls to limit access to software features.  These access controls also

control access to optional software, which can enable additional system features, including on

Philips ultrasound systems, which Philips licenses to end users for a fee.

20.     By way of example, Philips has sold and sells ultrasound systems driven by one of

two copyright-protected software platforms. Each of these platforms was created by, and is owned by, Philips, and includes Philips' confidential and proprietary information, intellectual property, and trade secrets.

21.     Each ultrasound system includes both model-specific features and machine-specific features that Philips enables pursuant to the license that the end user purchases. An ultrasound system may also support optional hardware add-ons and features, like ultrasound transducers, which Philips can enable if the end user purchases an additional license.

22.     For each Philips ultrasound system sold by Philips, only the licensed options and features purchased for that specific system are enabled, and only the specific authorized users of the machine can access the enabled features and software options. Features and options that have not been licensed are not accessible on the ultrasound system or by the authorized user—any attempt to use an unlicensed feature on an ultrasound system will result in an error message that the feature is not compatible with the system, and the machine-specific access controls will prevent access to the unlicensed feature. If a specific hardware add-on requires that a software feature be enabled to make use of such hardware, absent the required software, Philips' ultrasound systems will report an incompatible device and the related software will be disabled. For example, if a user attaches an ultrasound transducer to a Philips' ultrasound system, but the related software is not enabled for that ultrasound system, the imaging functionality will not be enabled and the user will receive an error message informing the user that the transducer is incompatible with that specific ultrasound system.

23.     Philips has spent considerable time and money developing access controls to limit and control access to the proprietary software-enabled features and options and licensed options files on its ultrasound systems, which contain Philips' trade secrets.

24.    The unauthorized access to and enablement of unlicensed features and options puts Philips' trade secret information, including its proprietary information, methods, and know-how for creating options files, at serious risk, and harms Philips' ability to control access to them.

25.    Further, Philips' trade secrets contained in Philips' proprietary information, methods, and know-how for creating options files, including information, methods, and know-how related to security measures for the options files, are not generally known in the industry.  Such trade secrets are extremely valuable to Philips, because Philips derives economic value from the information not being made public; any competitor who unlawfully uses unauthorized access methods to access Philips trade secret information would be able to unfairly compete against Philips.

## DEFENDANTS' UNAUTHORIZED ACTIVITY

26.    Defendants are not authorized to access, use, or disclose Philips' restricted confidential and trade secret software-enabled features and options of Philips ultrasound systems.

27.    Philips recently learned that Defendants sold unlawful access methods to a third party to allow the third party to gain access to restricted Philips software, including modified licensed options files, to enable unlicensed options and features on Philips' ultrasound systems.

28.    During its investigation of third-party medical device equipment sales and servicing company, Probo Medical, LLC ("Probo"), Philips discovered that Defendants sold unauthorized modified software files, unauthorized passwords, or modified licensed options files to Ultrasound Online, LLC ("Ultrasound Online"), which allowed Ultrasound Online to circumvent Philips's access controls and enable unlicensed options on Philips' ultrasound machines purchased or sold by Probo.  Ultrsasound Online provided a sworn declaration describing its dealings with Defendants, including invoices for its purchase of unauthorized access methods from Defendants,

and its principal's communications with Mr. Martinez, which was filed in another litigation in which Probo and Ultrasound Online are or were defendants (*Philips North America, LLC, et al. v., Radon Medical Imaging Corporation-WV, et al.*, 2:21-cv-00298 (S.D.W. Va.) at Dkt. Nos. 112-1, 114 [under seal filing]).

29.    According to the sworn testimony from Ultrasound Online, the unauthorized access method(s) sold by Defendants allowed enablement of unlicensed options on Philips' ultrasound machines purchased or sold by Probo, two Philips ultrasound machines that Probo sold for use at King's Daughters Medical Center in Ashland, Kentucky (the "KDMC machines"), and Philips ultrasound machines installed at Trinity Medical Centre West in Saint Clairsville, Ohio; Pediatric Cardiology in Morristown, New Jersey; and Soma Technology in Bloomfield, Connecticut.  Upon inspection of the KDMC machines, Philips learned that these machines had a multitude of software options, valued at over $300,000, that had been enabled on each without Philips' authorization.  In other words, the software configuration on these machines was modified from the original configuration as sold by Philips.

30.    Upon information and belief, Defendants are creating, using, or selling unauthorized access methods that allow the user to bypass Philips' access control measures and enable unlicensed options and features on Philips ultrasound systems.

31.    Upon information and belief, Defendants are engaged in a pattern and practice of creating, using, or selling unauthorized access methods that allow enablement of options and features on Philips' ultrasound machines that it knows or reasonably should know were not authorized or licensed by Philips.  Upon information and belief, Defendants have sold or otherwise provided unauthorized access methods at least to Probo, Ultrasound Online, and KPI Ultrasound,

Inc., to allow these companies or their affiliates to enable unlicensed features and options on Philips' ultrasound systems.

32.     Defendants have profited from their creation, use, or sale of unauthorized access methods for the purpose of enabling unlicensed features and options on Philips' ultrasound machines, with full awareness of this unlawful conduct.

33.     Philips has never authorized Defendants to sell access methods, or to enable options on, its ultrasound imaging systems.  Nor has Philips authorized Defendants to modify the software configuration of Philips' ultrasound systems.  Indeed, Philips does not authorize any third party to enable features and options on its ultrasound imaging systems—such enablement can only be done through authorized Philips' employees.

34.     The creation, use, or sale of unauthorized access methods to enable unlicensed features and options on Philips' medical imaging devices risk a multitude of harms, among other things: loading unauthorized software, changing system settings, and compromising virus protection, which could result in system overload and/or malfunction; modifying or de-activating the system's anti-virus software, which would leave the system vulnerable to cyber-attacks from other nefarious actors; tarnishing Philips' reputation and brand with its customers through system failures and modifications caused by Defendants; and potentially resulting in real time harm to a patient relying on the medical device.

35.     Defendants' creation, use, or sale of unauthorized access methods to enable hacking of Philips' ultrasound machines puts Philips' proprietary software and trade secret information at risk, and impedes Philips' ability to control the licensing of Philips' software-enabled options and features on its ultrasound systems.  Defendants' acts cause substantial harm to Philips.

36.     In short, Defendants are profiting at the expense of Philips by directly, or indirectly

through third parties, hacking Philips' software to enable unlicensed options and features that customers otherwise would have to license separately from Philips.

## COUNT I
### *Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (against both Defendants)*

37.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

38.     Defendants have intentionally or knowingly enabled, directly or through the sale of unauthorized access methods to third parties, unlicensed software features and options on Philips ultrasound systems at healthcare provider locations using one or more unauthorized access methods that they were not entitled to possess or use.

39.     On information and belief, Defendants created, used, or sold the unauthorized access methods to remove, bypass, or circumvent Philips' access controls intended to prevent the unauthorized enablement of software features and options on Philips ultrasound systems.

40.     On information and belief, Defendants have also intentionally or knowingly accessed (or caused or facilitated third parties to access) Philips ultrasound systems, using one or more unauthorized access methods, which may include counterfeit, intentionally modified, or otherwise unauthorized Philips' software, computer scripts, passwords, or some other unauthorized access methods.

41.     Defendants' unauthorized access methods have no legally valid use; Defendants' only use thereof is to facilitate enablement of unlicensed software features and options on Philips ultrasound systems.

42.     Defendants, by and through their conduct, have caused Philips to incur losses in excess of $5,000.00 in value in a one-year period related to the investigation of and cost of responding to Defendants' actions.

43.     Philips ultrasound systems at healthcare provider locations are sold, serviced, maintained, and employed through and in interstate commerce, or are typically connected to the Internet, and for all these reasons affect interstate commerce; thus, the Philips ultrasound systems are protected computers.

44.     Accordingly, Defendants, by and through their actions, have violated Section 1030(a)(2)(C), by intentionally accessing or causing or facilitating such access by third parties, a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer, and so causing loss exceeding $5,000 in a one-year period.

45.     On information and belief, Defendants hold themselves out as able to provide unauthorized access methods that allow unauthorized enablement of unlicensed software features and options, and received payment for creation, use, or sale of unauthorized access methods that allow the unauthorized enablement of Philips' proprietary software features and options on Philips ultrasound systems.  These proprietary features and options were developed at great expense to Philips and their unlawful use provides significant value to Defendants which is greater than $5,000 for a one-year period.

46.     Defendants, by and through their actions, have thus violated Section 1030(a)(4), by knowingly, and with the intent to defraud, accessing a protected computer, or causing or facilitating such access by third parties, without authorization or by exceeding authorized access to such a computer, and, by means of such conduct, furthered the intended fraud and obtained one or more things of value, including access and use of Philips' proprietary and trade secret software-enabled features and options on its ultrasound systems.

### COUNT II
***Harmful Access By Computer in Violation of Texas Penal Code § 33.02,***

***Tex. Civ. Prac. & Rem. Code § 143.001, et seq.***
***(against all Defendants)***

47.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

48.    The software in the Philips ultrasound systems at healthcare provider locations is a "computer, computer network, or computer system" within the meaning of Tex. Penal Code § 33.02.

49.    Defendants have violated Tex. Penal Code § 33.02 by knowingly and intentionally accessing or causing to be accessed Philips' software in the Philips systems without Philips' effective consent, as described above, including: knowingly or intentionally enabling, directly or through the sale of unauthorized access methods to third parties, unlicensed software features and options on Philips ultrasound systems at healthcare provider locations using one or more unauthorized access methods that they were not entitled to possess or use; and creating, using, or selling the unauthorized methods to remove, bypass, or circumvent Philips' access controls intended to prevent the unauthorized enablement of software features on the Philips ultrasound systems, without authorization.

50.    On information and belief, Defendants have also intentionally or knowingly accessed the Philips ultrasound systems using one or more unauthorized access methods, which may include counterfeit, intentionally modified, or otherwise unauthorized Philips' software, passwords, computer scripts, or some other unauthorized access methods.

51.    Philips was injured by reason of Defendants' violations of Tex. Penal Code § 33.02.

## <u>COUNT III</u>
***Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 and 1202***
***(against all Defendants)***

52.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all

other paragraphs of this Complaint as if fully set forth herein.

53.     Philips ultrasound systems include Philips' copyright-protected proprietary works.

54.     Philips' proprietary works within the Philips Systems are protected by copyright under Title 17.

55.     Philips employs numerous layered technological measures including, but not limited to, machine-specific access controls, to control access to and use of its copyrighted proprietary software and/or portions thereof on the Philips' devices.

56.     Philips also employs layers of technological measures, including access control measures, to protect Philips' copyright protected works, including software, by controlling access to and the duration of such access to Philips' protected works.

57.     Defendants have used one or more unauthorized access methods, which may include counterfeit, intentionally modified, or otherwise unauthorized Philips' software, passwords, computer scripts, or some other unauthorized access method to circumvent at least one of the technological measures that controls access to Philips' protected software.  Specifically, Defendants' use of these methods enable unauthorized users to circumvent technological measures to gain unauthorized access to the proprietary software.

58.     Defendants' methods of bypassing or circumventing access controls that protect Philips' works and control access to Philips' works also prevent unauthorized access to Philips' copyright-protected software within Philips ultrasound systems.  Upon information and belief, Defendants intentionally circumvented access controls using various unauthorized access methods, to gain unauthorized access and/or cause or facilitate such unauthorized access by third parties, to Philips' copyright-protected software on Philips ultrasound systems.

59.     Thus, Defendants have intentionally or knowingly circumvented technological measures that effectively control access to a work or works protected under Title 17, in violation of 17 U.S.C. § 1201(a)(1)(A) and § 1201(b)(1)(A) of the Digital Millennium Copyright Act.  In addition, by selling unauthorized modified software files and unauthorized passwords that allow third parties to circumvent Philips' access controls and enable unlicensed options, Defendants have trafficked in a technology, product, service, device, component, or part thereof that is primarily designed or produced for the purpose of circumventing Philips's access controls, in violation of 17 U.S.C. § 1201(a)(2) of the Digital Millennium Copyright Act.

60.     Philips' proprietary software includes access controls that are accessed and read by Philips' automated copyright license management software within Philips ultrasound systems, which is a standard component of Philips' proprietary software included in each Philips ultrasound system.

61.     Philips authorizes specific machines to execute only specific licensed optional software, and the specific software is only available on that specific machine consistent with the hardware and software features the customer purchases for that specific machine.

62.     When a Philips system boots up, a Philips access control allows the system to load only the licensed optional software based on machine-specific configurations accessed by Philips' access controls.  This automated system allows Philips to exclude unlicensed use of optional software and thus automatically enforces the terms and conditions under which Philips makes its software available on a Philips' ultrasound system.

63.     Philips' machine-specific configuration files for controlling access only to licensed optional software include copyright management information under 17 U.S.C. § 1202(c), including the terms and conditions of the use of the software residing thereon in machine readable

configuration files.

64.    Defendants' modifications to such copyright management information using unauthorized methods is intended to allow users to make unauthorized access to unlicensed portions of Philips' protected software.

65.    Defendants, by enabling or by facilitating the enablement of unlicensed features and options on Philips ultrasound systems, knowingly, and with the intent to induce, enable, facilitate, or conceal infringement by their customers, provide, and have provided, falsified copyright management information and/or distributed falsified copyright management information in violation of 17 U.S.C. § 1202(a).

66.    Defendants' intentional alteration of Philips' copyright management information and subsequent distribution of modified configuration files for accessing unlicensed portions of Philips' proprietary software is done with the knowledge that such behavior induces, enables, facilitates, or conceals infringement of Philips' copyright in its proprietary software in violation of 17 U.S.C. § 1202(b).

67.    Defendants' unauthorized means of accessing the Philips ultrasound systems, including Philips' unlicensed options files, has, and does, entail the unauthorized access, copying, and potential alteration of the contents of Philips' copyright-protected software.

68.    Philips has been and will continue to be damaged in an amount not presently known with certainty, but that will be proven at trial.

69.    Philips is entitled to the range of relief provided by 17 U.S.C. § 1203, including but not limited to, injunctive relief, compensatory damages or statutory damages, punitive damages, and Philips' costs and attorneys' fees in amounts to be proven at trial.  Defendants' conduct also has caused irreparable and incalculable harm and injuries to Philips, and, unless enjoined, will

cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

<u>**COUNT IV**</u>

*Defend Trade Secrets Act, 18 U.S.C. § 1836 (against all Defendants)*

70.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

71.     Philips owns and possesses certain confidential, proprietary, and trade secret information in Philips' information, methods, and know-how for creating licensed options files, including information, methods, and know-how related to security measures for the options files (Philips' "Trade Secrets" or "Trade Secret Information"), on Philips ultrasound systems.

72.     Philips' Trade Secret Information relates to products used in, or intended for use in, interstate or foreign commerce.

73.     Philips' Trade Secrets are trade secrets, because Philips (i) restricts access to them and (ii) has engaged in reasonable measures to maintain their secrecy.  These measures include, for example, proprietary information, methods, and know-how related to security measures for the options files, and other safeguards associated with Philips' licensed options files on Philips ultrasound systems, including in the form of technological and other safeguards.

74.     Philips has expended significant money and effort in developing Philips' Trade Secrets, and this information would be difficult to properly acquire or duplicate by Defendants.

75.     Philips' Trade Secrets derive independent economic value to Philips by not being generally known because, among other reasons, they allow Philips to grow its relationships with its customers; nor are Philips' Trade Secrets readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.

76.     Upon information and belief, Defendants misappropriated, or caused or facilitated third parties to misappropriate, some or all of Philips' Trade Secrets for their own use or benefit

without express or implied consent by Philips.  At the time of their misappropriation of the Trade Secrets, or their causing or facilitating misappropriation by third parties, Defendants knew or had reason to know that their (and third parties') knowledge of the Trade Secrets was acquired by improper means or under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets or limit their use, and that their (and third parties') knowledge of Philips' Trade Secrets was derived improperly or from or through a person who owed a duty to Philips to maintain the secrecy of the Trade Secrets or limit their use.

77.     Defendants' actions have been knowing, deliberate, willful, wanton, reckless, and in utter disregard of Philips' rights.

78.     Upon information and belief, as a result of Defendants' misappropriation of Philips' Trade Secrets, or their causing or facilitating misappropriation by third parties, Philips has suffered actual damages in an amount to be proven at trial.  At a minimum, Defendants have gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

79.     Defendants' conduct, and their ongoing and continuing misappropriation of the Trade Secrets, has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.

80.     Philips has been damaged by all of the foregoing and is entitled to an award of Defendants' profits, exemplary damages, and attorneys' fees and costs.

81.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have violated the DTSA, 18 U.S.C. § 1836.

### COUNT V
***Misappropriation of Trade Secrets under State Law including the Texas Uniform Trade***

**Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001, et seq.**
**(against all Defendants)**

82.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

83.     Philips owns and possesses certain confidential and proprietary Trade Secrets.

84.     Philips' proprietary Trade Secrets are trade secrets, because Philips (i) restricts access to them and (ii) has engaged in reasonable measures to maintain their secrecy.  These measures include, for example, information, methods, and know-how related to security measures for the options files, and other safeguards associated with Philips' licensed options files on Philips ultrasound systems, including in the form of technological safeguards.

85.     Philips has expended significant money and effort in developing Philips' Trade Secrets, and this information would be difficult to properly acquire or duplicate by Defendants.

86.     Philips' Trade Secrets derive independent economic value to Philips by not being generally known because, among other reasons, they allow Philips to grow its relationships with its customers; nor are Philips' Trade Secrets readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.

87.     Upon information and belief, Defendants misappropriated, or caused or facilitated third parties to misappropriate, some or all of the Trade Secrets for their own use or benefit without express or implied consent by Philips.  At the time of their misappropriation of the Trade Secrets, or their causing or facilitating misappropriation by third parties, Defendants knew or had reason to know that their (and third parties') knowledge of the Trade Secrets was acquired by improper means or under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets or limit their use, and that their (and third parties') knowledge of Philips' Trade Secrets was derived improperly or from or through a person who owed a duty to Philips to maintain the secrecy of the

Trade Secrets or limit their use.

88.     Defendants' actions have been knowing, deliberate, willful, wanton, reckless, and in utter disregard of Philips' rights.

89.     Upon information and belief, as a result of Defendants' misappropriation of Philips' Trade Secrets, or their causing or facilitating misappropriation by third parties, Philips has suffered actual damages in an amount to be proven at trial.  At a minimum, Defendants have gained an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

90.     Defendants' conduct, and their ongoing and continuing misappropriation of the Trade Secrets has caused, and will cause, Philips repeated and irreparable injury. Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.

91.     Philips has been damaged by all of the foregoing and is entitled to an award of actual damages and unjust enrichment.

92.     Because Defendants scheme is both willful and malicious, and is conducted in bad faith, Philips is entitled to an aware of exemplary damages and attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.004(b) and § 134A.005.

93.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have misappropriated Philips' Trade Secrets and have violated state trade secret acts, including the Tex. Civ. Prac. & Rem. Code § 134A.001.

<u>**COUNT VI**</u>
*Unfair Competition By Common-Law Misappropriation (against all Defendants)*

94.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein.

95.    As set forth in above allegations, Philips has expended substantial efforts, time, labor, skill, and money, to develop its proprietary software that enables certain functions on Philips' medical imaging systems and allows Philips' customers to obtain and pay for enabled features and additional options, including a variety of related Philips' hardware devices.

96.    Pursuant to the terms of license agreements purchased by an end user, Philips will enable an ultrasound system with both model-specific features and machine-specific features.

97.    Philips has developed access controls methods to limit and control access to the proprietary software-enabled features and options and licensed options files on its ultrasound systems.

98.    Defendants have engaged in a pattern of conduct, including using unauthorized access methods to hack Philips ultrasound systems to enable unlicensed software options, or to cause or facilitate such unauthorized enablement of unlicensed software options or access by third parties, which is contrary to honest practice in industrial and commercial matters, and in order to gain an unfair advantage in competition with Philips.

99.    Defendants' use of such unauthorized access methods to enable options on Philips' machines unfairly interferes with Philips' license agreements with end user customers related to the enablement of features and options on ultrasound machines.

100.    Defendants are unfairly competing in the marketplace, including unfairly competing with Philips' business of licensing options and features for its ultrasound machines to end user customers. Upon information and belief, Defendants' actions have directly and proximately caused, and may further cause, Philips to lose clients, customers, income, and goodwill.  In addition to proximately causing Philips to suffer monetary damages, Defendants' actions have caused Philips to suffer damages for which Philips has no adequate remedy at law.

For this reason, Defendants should be enjoined and restrained by order of this Court, in addition to monetary damages.

## JURY TRIAL DEMANDED

101.    Philips requests a jury trial on all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Philips respectfully requests that this Court:

A.    issue an order preliminarily and permanently enjoining Defendants and all of their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation or privity with any of them, from further misconduct including, but not limited to, misappropriation of Philips' trade secrets under the DTSA and UTSA, violations of the CFAA, violations of Texas Penal Code § 33.02, violations of the DMCA, and other unfair and deceptive trade practices;

B.    enter a final order in Philips' favor and holding Defendants jointly liable for all claims set forth herein;

C.    enter an order requiring an accounting of profits;

D.    award monetary damages to Philips, including but not limited to compensatory damages, enhanced, statutory damages, and punitive damages to the extent recoverable by law;

E.    award Philips its attorneys' fees and costs to the extent recoverable by law;

F.    award Philips any other damages and/or relief deemed appropriate by the Court, including without limitation, disgorgement of Defendants' profits attributable to their misconduct.

Dated:  February 13, 2023

Respectfully submitted,

REED SMITH LLP


*/s/ Cheryl L. Blount*
Cheryl L. Blount
State Bar No. 24076279
Fed. ID No. 1447148
cblount@reedsmith.com
811 Main, Suite 1700
Houston, Texas 77002
Telephone: (713) 469-3800
Facsimile: (713) 469-3899

*Attorney-in-Charge for Plaintiff*

James T. Hultquist (*pro hac vice* application
to be filed)
jhultquist@reedsmith.com
Jennifer Y. DePriest (*pro hac vice* application
to be filed)
jdepriest@reedsmith.com
10 South Wacker Drive
Chicago, IL 60606-7507
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400

*Of Counsel for Plaintiff*